Matter of Cavalier (2025 NY Slip Op 06058)

Matter of Cavalier

2025 NY Slip Op 06058

Decided on November 5, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 5, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2022-06396

[*1]In the Matter of Matthew John Cavalier, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Matthew John Cavalier, respondent. (Attorney Registration No. 2809465)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 12, 1997.

Catherine A. Sheridan, Hauppauge, NY (Stacey J. Sharpelletti of counsel), for petitioner.
Matthew John Cavalier, Oakland Gardens, NY, respondent pro se.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the
respondent with a notice of petition and a verified petition, both dated August 5, 2022. The petition contains ten charges of professional misconduct. The respondent served and filed a verified answer dated August 25, 2022, admitting to the factual allegations and conclusions of law contained in the petition. By decision and order on application dated September 26, 2023, this Court referred the matter to the Honorable Ralph T. Gazzillo, as Special Referee, to hear and report. A prehearing conference was held on October 23, 2023, and a hearing was conducted on November 13, 2023. In a report dated January 8, 2024, the Special Referee sustained all ten charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent does not cross-move or otherwise respond to the Grievance Committee's motion.
The Petition
The facts and legal conclusions of the petition are undisputed. The respondent maintained and was the sole signatory on an attorney trust account at JPMorgan Chase Bank, entitled "CAVALIER & ASSOCIATES PC, ATTORNEY TRUST ACCOUNT IOLA, CLIENT TRUST ACCOUNT," with an account number ending in 4601 (hereinafter the escrow account). The respondent also maintained an account at the same bank, entitled "CAVALIER & ASSOCIATES PC," with an account number ending in 4619 (hereinafter the operating account). Charges one through four allege that the respondent misappropriated fiduciary funds from the escrow account, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge one alleges that on June 20, 2017, and August 4, 2017, fiduciary funds totaling $110,000 were deposited into the escrow account in connection with the respondent's client, Ferrara. Following the payment of $75,546.63 on behalf of Ferrara between June 22, 2017, and August 24, 2017, the respondent was required to maintain $34,453.37 in his escrow account for [*2]Ferrara between August 24, 2017, and at least August 29, 2017. The respondent's escrow account balance on August 24, 2017, was $28,046.80 ($6,406.57 deficient), and on August 29, 2017, the balance fell to $27,801.01 ($6,652.36 deficient).
Charge two alleges that on September 11, 2017, $180,000 was deposited into the respondent's escrow account, representing a down payment in connection with a real estate transaction regarding a property located on Hillside Avenue in Queens Village (hereinafter the Hillside Avenue matter). The closing for this property occurred on March 28, 2018. In the approximately 6½ months between September 11, 2017, and March 28, 2018, the respondent was required to maintain $180,000 in his escrow account but failed to do so on the following dates, which spanned approximately two weeks:
DateBalance Amount of Deficiency
1/16/18 $179,456.58 $543.42
1/22/18 $179,208.25 $791.75
1/31/18 $179,848.01 $151.99
Charge three alleges that, following various withdrawals and deposits made between September 2017 and October 2017 in relation to the Ferrara matter, between October 30, 2017, and November 7, 2017, the respondent was required to maintain at least $216,853.17 on deposit in his escrow account. These funds were comprised of $36,853.37 for the Ferrara matter and $180,000 for the Hillside Avenue matter. On the following dates, the balance in the respondent's escrow account fell below the amount that he was required to maintain in connection with these two matters:
DateBalance Amount of Deficiency
10/30/17 $194,802.60 $22,050.57
10/31/17 $194,634.14 $22,219.03
11/2/17 $193,437.75 $23,415.42
11/6/17 $192,354.02 $24,499.15
Charge four alleges that on June 30, 2018, the respondent's escrow account balance was $10,230.03, which was comprised of his personal funds. A series of deposits and disbursements in July and September 2018 were made on behalf of the respondent's client, Organization Resources Group (hereinafter ORG), for the Ortiz and Helms collections matters. Following these transactions, between September 12, 2018, and at least September 20, 2018, the respondent was required to maintain at least $2,998.74 in his escrow account in connection with these two matters. However, on September 20, 2018, the respondent's escrow balance was only $962, which was $2,036.74 deficient.
Charge five alleges that the respondent failed to deposit and maintain funds belonging to another person and in his possession incident to his practice of law into a special account separate from any of his business or personal accounts, in violation of rule 1.15(b)(1) of the Rules of Professional Conduct. On September 5, 2017, and November 22, 2017, in two separate matters related to ORG, a total of $7,420.98 in funds entrusted to the respondent as a fiduciary were deposited into his operating account. Between September 19, 2017, and January 16, 2018, that amount, $7,420.98, was disbursed from the respondent's escrow account in connection with these same two matters.
Charge six alleges that the respondent misused his escrow account, in violation of rule 1.15(b) of the Rules of Professional Conduct. On September 5, 2016, $308,927.24 was deposited into the respondent's escrow account, comprised of personal funds related to the sale of his personal real property. On multiple occasions between September 2016 and May 2019, the respondent deposited personal funds, including earned legal fees, into his escrow account. From at least September 2016 through May 2019, the respondent made monthly disbursements from his escrow account for personal or business expenses, including electronic withdrawals for the payment of credit cards, insurance, utilities, phone bills, and federal taxes.
Charge seven alleges that the respondent commingled personal funds with funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct. For at least the approximately two years between September 2016 and October 2018, the respondent maintained personal funds in his escrow account at times when fiduciary funds were also present in that account.
Charge eight alleges that the respondent failed to make or maintain required bookkeeping records for his escrow account, in violation of rule 1.15(d)(2) of the Rules of Professional Conduct. For the approximately 2½ years between September 2016 and May 2019, the [*3]respondent failed to make or maintain records of all deposits into and withdrawals from his escrow account showing the date, source, and description of each item deposited, and the date, payee, and purpose of each withdrawal or disbursement. During at least this same time period, the respondent also failed to make or maintain a contemporaneous ledger book or similar records of all transactions in his escrow account showing the source of all funds deposited, the names of all persons for whom the funds were held, the amount of such funds, the description and amounts, and the names of all persons to whom such funds were disbursed.
Charges nine and ten both allege that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct. Charge nine alleges that from at least September 2016 through May 2019, the respondent failed to reconcile his escrow account. The misconduct alleged in charge ten is based on all of the allegations set forth in charges one through nine.
The Hearing Record
At the hearing, the Grievance Committee's case relied on documentary evidence, and the respondent testified on his own behalf. The respondent began his commercial and no-fault collections practice in 1997, which he continued for 20 years, until he began working as an arbitrator with the American Arbitration Association in January 2017, which required no legal license. The respondent had not practiced law since November 2019. During the time that he worked in collections, the respondent's firm operated a high-volume business, representing more than 300 medical practices, settling 100,000 cases in two years, and collecting 300,000 checks for its clients.
The respondent provided evidence that he had represented Ferrara (related to charges one and three) in the sale of several loan portfolios to hedge funds for which Ferrara and the respondent each received commissions that were wired to the respondent's escrow account. The respondent then disbursed Ferrara's commission according to Ferrara's instruction, at times to cover Ferrara's personal expenses. The respondent provided contrary testimony for this arrangement, including that he was helping Ferrara conceal how much Ferrara had leveraged his assets. The respondent stated that he reviewed contracts for Ferrara for more than 10 years and was paid $41,453.33 for his services, although he provided no bill and testified that his fee became due when Ferrara became able to pay. The respondent did not provide any specific explanation as to what caused the escrow account deficiencies alleged in charges one and three.
With regard to the Hillside Avenue matter (related to charges two and three), the respondent testified that he worked out the figures for the closing checks prior to the closing with the title closer, but at the closing, a different title closer attended, arrived late, and recalculated the checks incorrectly, causing the respondent to over-disburse $30,000 to the sellers. The respondent claimed that he did not insist on checking the new calculations because the buyers, who had offered significantly more than other purchasers, were on their way from the closing to the airport for an international flight and had threatened to abandon their purchase if it did not close before they left. The sellers ultimately returned the $30,000 over-disbursement, which allowed a check to the title company that had previously been returned for insufficient funds to clear.
As to charge four, the respondent submitted evidence that two checks, both dated August 21, 2018, related to ORG, were returned for insufficient funds. According to the respondent, one of the checks was dishonored essentially due to the high volume of identically-valued checks in the respondent's and ORG's collections businesses, causing ORG staff to mistakenly apply the funds to the wrong claim five years earlier. The respondent testified that he replaced the funds for this check with his own money, rather than trying to figure out exactly what happened to the misapplied funds, noting that the error was "[his] fault alone." With regard to the other dishonored check, the respondent testified that the corresponding funds were not available in his escrow account, essentially because he paid personal expenses from his escrow account and failed to reconcile this account, causing an "inadvertent invasion of client funds." The respondent claimed that in the end, all of the money that he received on behalf of ORG was disbursed.
With regard to the two deposits of fiduciary funds into his operating account (related to charge five), the respondent essentially claimed that ORG staff or a bank teller deposited the funds into the wrong account. While the respondent initially claimed that he transferred the mistakenly-deposited funds into his escrow account, he ultimately admitted that no such transfer was made prior to the corresponding checks being disbursed from his escrow account. For charges six and seven, which allege that the respondent deposited his personal funds into his escrow account, thus, in the case of charge seven, commingling, the respondent explained that some of these funds were from [*4]the sale of his father's condominium. The respondent further admitted that he knew he was not supposed to deposit these funds into his escrow account or to use such account to pay personal expenses. The respondent claimed that he nonetheless did so because, inter alia, it "was just easier" as he had memorized the account and routing numbers for this escrow account and carried the requisite stamp and deposit tickets with him. He also preferred to keep some of his personal funds hidden from loved ones in his escrow account. With regard to his escrow mismanagement generally, the respondent stated that "there's no excuse other than being bad at math and lazy and trying to do too many things at once and forgetting."
The respondent testified with regard to charge eight that other than bank statements, he did not maintain any records, such as client ledgers, allowing him to identify the source and purpose of all deposits and disbursements from his attorney escrow account. He further testified that he did not reconcile his escrow account until he was asked to do so by the Grievance Committee as part of its investigation.
In mitigation, the respondent testified, among other things, that the errors made by ORG staff in misattributing payments to mistaken accounts were all made in favor of his collections clients and that "the sheer volume [of these cases] made it impossible to be perfect." The respondent claimed that he never intended to defraud anyone and that his errors were due to "sloppy bookkeeping and too much work going on" and failing to supervise his staff closely enough. According to the respondent, each of the parties affected by his misconduct in charges one through five received all of the funds to which they were entitled. The respondent no longer does personal injury or real estate work and does not practice law. He has engaged in a significant number of charity events between 2008 and 2018 and indicated that part of his motivation to do so was to foster good will in order to get legal referrals.
In aggravation, the respondent admitted that prior to the Grievance Committee's investigation, he had not kept proper bookkeeping records that would have allowed him to discover his errors independently, and therefore, it became difficult to distinguish his fiduciary funds from his own personal funds held in escrow. Certain errors he discovered only as a result of the Grievance Committee's investigation. He further admitted that he would pay personal bills from his escrow account on the day that they came due, and he therefore did not take the time to transfer his personal funds out of his escrow account but instead paid them directly from his escrow account, often by electronic transfer. The respondent acknowledged that he delayed in responding to the Grievance Committee with regard to all four of its investigations into his dishonored checks, a delay which he attributed to, inter alia, being distracted based on becoming an arbitrator, attempting to sell his law practice, defending an eviction proceeding against his practice, moving his entire practice to a new location, the health problems of two people close to him, and assisting an organization that he represented undergoing an audit based on charges of Medicaid and Medicare fraud. The respondent failed to directly express remorse for violating his fiduciary duties but admitted that his failure to reconcile and keep financial records caused him to lose money in the form of lost reimbursements. The Grievance Committee notes that the respondent has a prior admonition in 2016 and two prior letters of caution in 2013 and 2010, all related to escrow mismanagement.
The Special Referee's Report
In a report dated January 8, 2024, the Special Referee sustained all ten charges in the petition. The Special Referee noted that the respondent appeared to be truthful and candid and readily admitted his transgressions. The Special Referee commented on the respondent's remarkable charitable efforts but also noted that the respondent blamed parts of his misconduct on others, although commingling, paying personal expenses from his escrow account, and failing to maintain required ledgers could not be blamed on staff. The Special Referee stated that "while obviously [the respondent] ran a high volume practice, his remark that it made perfection impossible stands next to his damning admissions of stupidity, sloppiness, laziness, and not paying attention."
Findings and Conclusion
In view of the evidence adduced at the hearing and the admissions, we find that the Special Referee properly sustained all ten charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, among other things, the respondent's candor, his charitable work, and the evidence of his positive character. Notwithstanding the mitigation advanced, we find that the respondent knowingly failed to honor his obligations as a fiduciary and [*5]repeatedly misused his escrow account by depositing personal funds therein while not maintaining proper records. Over the course of years, the respondent failed to reconcile his escrow account and routinely paid personal expenses from this account, after having been specifically warned by the Grievance Committee not to do so.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of two years (see Matter of Farkas, 133 AD3d 81).
LASALLE, P.J., DILLON, DUFFY, BARROS AND CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Matthew John Cavalier, is suspended from the practice of law for a period of two years, commencing December 5, 2025, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than June 5, 2027. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Matthew John Cavalier, shall comply with the rules
governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Matthew John Cavalier, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Matthew John Cavalier, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court